UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ROGERIO DA SILVA LIMA          *
                               *
        Petitioner,            *
                               *
        v.                     *
                               *        Civil Action No. 1:26-cv-12266-IT
                               *
DAVID WESLING, Field Office Director,  *
et al.,                        *
                               *
        Respondents.           *

MEMORANDUM & ORDER

May 27, 2026

TALWANI, D.J.

At a May 26, 2026 hearing in this matter, the court orally granted Petitioner Rogerio da

Silva Lima's Petition for Writ of Habeas Corpus [Doc. No. 1], with this written Memorandum

and Order setting forth the court's reasoning to follow.

I.      Background

Petitioner is a Brazilian noncitizen who entered the United States on or about November

10, 2021. Resp'ts' Resp. 3 [Doc. No. 10]. Petitioner was charged and initially detained under 8

U.S.C. § 1182(a)(6)(A)(i) as an alien present in the United States without being admitted or

paroled. Resp'ts' Resp. Ex. 1, at ECF 1 [Doc. No. 10-1] ("Notice to Appear"). Under 8 U.S.C. §

1226(a)(2), an individual so arrested may be released on bond and conditions, and Petitioner was

released at some date thereafter. The written record is silent as to when that release occurred or

the terms or conditions of Petitioner's release, but Respondents' counsel confirmed at the hearing

on this matter that Petitioner was released shortly after he was first detained, most likely on his

own recognizance.

On August 23, 2023, an Immigration Judge held a hearing on Petitioner's application for

asylum, withholding of removal, and withholding of removal under the Convention Against Torture, denied the application, and ordered Petitioner removed to Brazil. Resp'ts' Resp. Ex. 2, at ECF 1–3 [Doc. No. 10-2] ("Order of Immigration Judge"). Petitioner appealed the denial to the Board of Immigration Appeals ("BIA"), which dismissed the appeal on February 2, 2024. Resp'ts' Resp. Ex. 3, at ECF 3–5 [Doc. No. 10-3] ("BIA Decision"). Despite the dismissal of the appeal, Respondents did not detain Petitioner at that time.

More than two years later, on May 18, 2026, Petitioner and his minor son were arrested while fishing with a third individual. Pet. ¶ 2 [Doc. No. 1]; see Pet'r's Reply 2 [Doc. No. 14] (first citing Eunki Seonwoo & Nicholas Vukota, Taken from Menemsha, MARTHA'S VINEYARD TIMES (May 20, 2026), https://www.mvtimes.com/2026/05/20/taken-from-menemsha/ (last accessed May 26, 2026); and then citing Travis Anderson & Giulia McDonnell Nieto del Rio, Cape Cod Lawmaker Rips Detention of Father, Son Taken Into ICE Custody While Fishing Off of Martha's Vineyard, BOSTON GLOBE (May 20, 2026) https://www.bostonglobe.com/2026/05/20/metro/julian-cyr-father-son-detained/ (last accessed May 26, 2026)).[1] According to the news reports, Petitioner, his son, and the third individual were first approached in their fishing vessel by the Coast Guard at around 7:00 a.m.

The Coast Guard reportedly told the group that they "were free to go[,]" but returned thirty minutes later to check their fishing license and left again after verifying that they were properly licensed. Seonwoo & Vukota, supra; see Anderson & Nieto del Rio, supra. The Coast Guard then reportedly returned to the vessel for a third time, boarded the vessel at approximately 10 a.m., requested Petitioner's identification, and proceeded to arrest Petitioner and his minor

---

[1] Respondents have provided no contrary information regarding the arrest.

son before transferring them to ICE custody in Woods Hole, Massachusetts. Seonwoo & Vukota, supra; Anderson & Nieto del Rio, supra. A Warrant of Removal/Deportation, digitally signed that afternoon at "13:24:35[,]" cites as the basis for removal "a final order by . . . an immigration judge in exclusion, deportation, or removal proceedings," and the Immigration and Nationality Act, § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i). See Resp'ts' Resp. Ex. 4, at 1 [Doc. No. 10-4] ("Warrant of Removal").

That same day, while in custody in Burlington, Massachusetts, Petitioner filed his Petition [Doc. No. 1]. The emergency duty judge ordered Respondents not to remove Petitioner from Massachusetts without providing at least 72 hours' notice to allow the assigned judge time to review the merits of the petition. Emergency Order Concerning Stay of Transfer or Removal [Doc. No. 2]. The next morning, this court reiterated that order. See Order Concerning Service of Petition and Stay of Transfer or Removal [Doc. No. 4]. Later that day, Respondents filed a Notice [Doc. No. 7] of their intent to transfer Petitioner and his minor son from Massachusetts to Texas "no less than 72 hours from the time of filing" of the notice. Id. at 1.

On May 22, 2026, the court notified the parties that Petitioner's Petition [Doc. No. 1] remained under advisement and would be set for hearing. Elec. Order [Doc. No. 15]. The court ordered Respondents not to remove Petitioner from Massachusetts pending further court order. Id.

## II.    Discussion

Respondents contend that Petitioner is detained pursuant to 8 U.S.C. § 1231(a)(1) and that detention would also be authorized under § 1231(a)(6). Petitioner contends neither provision applies.

A.    *The 90-Day Removal Period Under Section 1231(a)(1) and Mandatory Detention During that Removal Period Under Section 1231(a)(2)*

Respondents first assert, without explanation, that "Petitioner is detained pursuant to § 1231(a)(1) as he is not beyond the 90-day removal period." Resp'ts' Resp. 6 [Doc. No. 10].

Under 8 U.S.C. § 1231, when a noncitizen is subject to a final order of removal, the Secretary of the Department of Homeland Security ("DHS") "shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." Id. § 1231(a)(1)(A). Under the subheading "Beginning of period," § 1231(a)(1)(B) provides:

> The removal period begins on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

Id. § 1231(a)(1)(B); see also 8 C.F.R. § 241.3(a) ("Once the removal period defined in [8 U.S.C. § 1231(a)(1)] begins, an alien in the United States will be taken into custody pursuant to the warrant of removal"). During the 90-day removal period, detention is mandatory. 8 U.S.C. § 1231(a)(2)(A); Zadvydas v. Davis, 533 U.S. 678, 683 (2001) ("[D]uring the 90–day removal period . . . aliens must be held in custody.").

Counsel for both sides confirmed at the hearing that Petitioner did not seek judicial review of the BIA's dismissal order and that Petitioner was not in non-immigration custody at the time of the decision, so neither subsection §§ 1231(a)(1)(B)(ii) nor (iii) applies here. There is also no dispute that Petitioner's Order of Removal became final on February 2, 2024, when his appeal was dismissed. See BIA Decision [Doc. No. 10-3]; see also Resp'ts' Resp. 2 n.1 [Doc. No. 10] (acknowledging that Petitioner's order of removal was administratively final in 2024). Under the plain language of § 1231(a)(1)(B)(i), Petitioner's 90-day removal period "begins" on

4

February 2, 2024, and ends 90 days later on May 2, 2024. DHS's failure to remove Petitioner during this 90-day removal period does not mean that DHS is now authorized under § 1231(a)(1) to start a new 90-day removal period not contemplated by the statute. Accordingly, where Petitioner's detention does not fall within the 90-day removal period set out in § 1231(a)(1), detention under 8 U.S.C. § 1231(a)(2)(A) is not applicable here.

B.    *Detention or Release After the 90-day Removal Period Expires*

Section 1231(a) contains two provisions relevant to detention or release after the 90-day removal period has expired. Section 1231(a)(3), entitled "Supervision after 90-day period," mandates that if a noncitizen "does not leave or is not removed within the removal period, the alien, pending removal, <u>shall</u> be subject to supervision under regulations prescribed by the [Secretary of Homeland Security]." 8 U.S.C. § 1231(a)(3) (emphasis added). Section 1231(a)(6) provides that a noncitizen who is

> inadmissible under section 1182 of this title . . . or who has been determined by the [Secretary of Homeland Security] to be a risk to the community or unlikely to comply with the order of removal, <u>may</u> be detained <u>beyond the removal period and, if released, shall be subject to . . . terms of supervision</u>[.]

<u>Id.</u> § 1231(a)(6) (emphasis added).

Although Respondents assert that the basis for Petitioner's detention is § 1231(a)(1), they also argue that an inadmissible noncitizen may be detained "beyond the removal period" under § 1231(a)(6). Resp'ts' Resp. 5 [Doc. No. 10].[2] Petitioner responds that § 1231(a)(6) solely authorizes continued detention after the removal period and does not authorize Petitioner's detention where Petitioner was not detained during the removal period. <u>See</u> Pet'r's Reply 4–5

---

[2] Respondents indicate, and the record supports, that Petitioner has been determined to be inadmissible pursuant to 8 U.S.C. § 1182. <u>See</u> Notice to Appear ECF 1 [Doc. No. 10-1].

[Doc. No. 14]. Petitioner contends further that where the government did not detain Petitioner pursuant to § 1231(a)(6) at the end of the removal period, Respondents were instead required to place Petitioner under an order of supervision ("OSUP") pursuant to § 1231(a)(3). Id. at 9–11. The court considers detention and release in turn.

1.   Detention Under 8 U.S.C. § 1231(a)(6)

Under § 1231(a)(6), certain noncitizens ordered removed "may be detained beyond the removal period[.]" Id. (emphasis added). The court joins multiple courts that have found that this section applies to individuals originally detained during the 90-day removal period, whose detention may be extended beyond the 90 days, and does not apply to an initial detention occurring after the removal period has ended. See Parra v. Favro, 2026 WL 1030870, *4–5 (N.D.N.Y. Apr. 16, 2026) (collecting cases).

In Diallo v. Joyce, 817 F. Supp. 3d 202 (S.D.N.Y. 2025), the court explained that this reading:

> reflects the longstanding view of the Supreme Court, the United States, and immigration authorities themselves about how section 1231(a)(6) works. See, e.g., Zadvydas v. Davis, 533 U.S. 678, 683 (2001) ("After entry of a final removal order and during the 90-day removal period, however, aliens must be held in custody. § 1231(a)(2). Subsequently, as the post-removal-period statute provides, the Government 'may' continue to detain an alien who remains here or release that alien under supervision. § 1231(a)(6)." (emphasis added)); Brief for Petitioners at 21, Ashcroft v. Ma, 533 U.S. 678 (2001) (No. 00-38), 2000 WL 1784982, at *21 ("The plain language of Section 1231(a)(6) thus vests the Attorney General with the authority to continue an alien in detention beyond the removal period . . . ." (emphasis added)); Continued Detention of Aliens Subject to Final Orders of Removal, 66 Fed. Reg. 56967-01, 2001 WL 1408247 (Nov. 14, 2001) ("After expiration of the removal period, section [1231(a)(6)] of the Act grants authority to the Attorney General to continue the detention of . . . [a]ny inadmissible alien . . . ." (emphasis added)).

Id. at 205 (footnote omitted) (cleaned up). The Diallo court also relied on the plain language of § 1232(a)(6), where the clause "may be detained beyond the removal period" is followed by "and, if released, shall be subject to the terms of supervision in paragraph (3)." Id. at 206

6

(emphases in original). The statute's use of "and, if released[,]" the court explained, "reflects that section 1231(a)(6) applies to people who are already in detention, as they would be during the 90-day removal period." Id.

The government relies here on Zadvydas for the proposition that Petitioner's challenge to detention is premature. Resp'ts' Resp. 2, 7–12 [Doc. No. 10]. As the Diallo court explained, however, "Zadvydas dealt with a different question: how long following the ninety-day mandatory detention period can a person be detained under section 1231(a)(6)[.]" 817 F. Supp. 3d at 206 (emphasis in original). As to the question of when § 1231(a)(6) applied, "the [Zadvydas] Court took as a given that it follows immediately after the ninety-day removal period." Id. at 207; Zadvydas, 533 U.S. at 682 (noting § 1231(a)(6) "authorizes further detention if the Government fails to remove the alien during those 90 days"); id. at 683 (noting that during the removal period, a person must be held in custody, and that "[s]ubsequently, as the post-removal-period statute provides, the Government 'may' continue to detain an alien").

Accordingly, detention under 8 U.S.C. § 1231(a)(6) is not applicable here where Petitioner was never detained during the removal period.

### 2. Detention as a Revocation of Release

The arrest after Petitioner had previously been released—that is, while Petitioner was not detained during either the removal period or after the removal period ended—is also inconsistent with the regulatory scheme. Under both § 1231(a)(3) and § 1231(a)(6), after the government releases a noncitizen following the 90-day removal period, the government may, at a later time, revoke this release and detain the individual, so long as it follows the procedures set out by DHS regulations. Under 8 C.F.R. § 241.4(l)(2), DHS may revoke release if an official in the exercise of discretion determines:

(i) [t]he purposes of release have been served; (ii) [t]he alien violates any condition of release; (iii) [i]t is appropriate to enforce a removal order or to commence removal proceedings against an alien; or (iv) [t]he conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

8 C.F.R. § 241.4(*l*)(2). The regulations governing revocation provide noncitizens with some procedural protections: noncitizens must be notified of the reasons for the revocation and must have an initial informal interview "to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4(*l*)(1); see also Perez-Escobar v. Moniz, 792 F. Supp. 3d 224, 225 (D. Mass. 2025).

Here, Respondents failed to detain Petitioner during the 90-day removal period as required by statute. Following the removal period, while Petitioner was not detained, Respondents did not place Petitioner under an OSUP. Now, two years later, Respondents seek to exercise their discretion to detain Petitioner pursuant to § 1231(a)(6). It cannot be, however, that where the government failed to abide by statutory requirements earlier, that Respondents can now bypass the procedural protections Petitioner would have been entitled to if the government had followed the law in the first place. That is to say, the government cannot now reap the benefits of its own failure to place Petitioner under an OSUP, as it was required to do. See Diallo, 817 F. Supp. 3d at 209 ("[I]t defies common sense to broadly read section 1231 to authorize Diallo's detention even though she was never previously detained nor given any order of supervision, but to deprive her of the procedural safeguards that someone like Diallo would have if the government had only followed its own legal mandates.").

Nor can it be the case that a noncitizen would have less protection when the government fails to follow any of its procedures than he or she would had the government followed the law. Accordingly, at minimum, when Respondents detained Petitioner he was entitled to the protections he would have received had he been detained pursuant to the revocation of an OSUP.

8

The record does not establish that Petitioner received any of the protections set forth in the regulatory scheme. At no point does the record note that Respondents determined that the purposes of release had been served, that Petitioner had violated a condition of release, that it was appropriate now to enforce a removal order, or that the conduct of Petitioner, or any other circumstance, indicated that release would no longer be appropriate. 8 C.F.R. § 241.4(*l*)(2). Nor have Respondents asserted that they have determined, "on account of changed circumstances, . . . that there is a significant likelihood that [Petitioner] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). Further, the record does not show that Petitioner received a notification setting forth the reasons for his detention upon being detained, or any opportunity for an informal interview allowing Petitioner to respond to the reasons for revocation. See 8 C.F.R. § 241.4(*l*)(1); 8 C.F.R. § 241.13(i)(3). "Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures." Morton v. Ruiz, 415 U.S. 199, 235 (1974); see also Jimenez v. Cronen, 317 F. Supp. 3d 626, 638–39 (D. Mass. 2018) ("In essence, the government, as well as the governed, must follow the law, and in habeas it is the court's duty to ensure that it does."). Here, Respondents failed to follow both statutory requirements and their own regulations when they did not place Petitioner under an OSUP and consequently did not properly revoke the OSUP in order to detain him.

The requirements Respondents failed to follow implicate noncitizens' procedural due process rights to notice and an opportunity to be heard. See Jimenez, 317 F. Supp. 3d at 655 ("8 C.F.R. § 241.4 was promulgated in an effort to provide [noncitizens] the procedural due process that courts had found to be constitutionally required."). And "where an immigration 'regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute,' like the opportunity to be heard, 'and [ICE] fails to adhere to it, the challenged [action] is

invalid . . . .'" <u>Rombot v. Souza</u>, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) (alteration in original) (quoting <u>Waldron v. I.N.S.</u>, 17 F.3d 511, 518 (2d Cir. 1993)); <u>see</u> <u>Perez-Escobar</u>, 792 F. Supp. 3d at 226–27 (ordering release where respondents failed to abide by 8 C.F.R. § 231.4(*l*)(1)); <u>Hall v. Nessinger</u>, No. 25-CV-667-JJM-PAS, 2026 WL 18583, at *9 (D.R.I. Jan. 2, 2026) (ordering immediate release where the court determined ICE had not abided by 8 C.F.R. § 231.13).

In sum, the court finds Petitioner's detention is not authorized here by the regulations governing revocation of an order of supervision.[3]

### 3. Release under § 1231(a)(3) and § 1231(a)(6)

As detailed above, both § 1231(a)(3) and § 1231(a)(6) provide for release under supervision after the 90-day removal period has expired: the former applies in those circumstances where the noncitizen "does not leave or is not removed within the removal period" and the latter in those circumstances where the noncitizen is "released" following detention that began during the 90 day removal period. Here, Petitioner was released on his own recognizance when he first entered the country. He was not detained during the removal period, and he did not leave and was not removed within the removal period. Accordingly, where Petitioner remained released prior to the instant arrest, and § 1231(a)(3) mandates release on an order of supervision after the removal period ends, the court orders Petitioner's release under supervision pursuant to an OSUP.

---

[3] Petitioner also argues his detention is unlawful where the warrant for his arrest was issued after rather than before the Coast Guard arrested him. Pet'r's Reply 14 [Doc. No. 14]. Because the court finds Petitioner's detention is unlawful where Respondents failed to follow statutory and regulatory requirements, the court need not reach this argument.

### III.    Conclusion

Accordingly, for the foregoing reasons, Petitioner's <u>Petition for Writ of Habeas Corpus</u> [Doc. No. 1] is GRANTED. Respondents shall release Petitioner from custody under an Order of Supervision no later than May 27, 2026, at noon.

IT IS SO ORDERED.

May 27, 2026                                              /s/ Indira Talwani
                                                                   United States District Judge

11